UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., | No. C 10-5134 PJH (NJV) |
| Plaintiff, | REPORT AND RECOMMENDATION ON PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT (Doc. No. 19) |
| v. | |
| ALVIN CUTODIO VERZOSA, et al., | |
| Defendants. | |

On February 18, 2011, Plaintiff J & J Sports Productions, Inc., filed the present Motion for Default Judgment against Defendants Alvin Custodio Verzosa, Victorino Ramos Alejandro and Emilio Jularbal, individually and d/b/a Level 236 a/k/a Casbah Restaurant; and Triple V, Inc., an unknown business entity d/b/a Level 236 a/k/a Casbah Restaurant.  On February 23, 2011, this matter was referred to the undersigned for Report and Recommendations.  (Docket No. 20.)

**LEGAL STANDARD**

Rule 55, Federal Rules of Civil Procedure, provides in part as follows:

(2) By the Court. In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals--preserving any federal statutory right to a jury trial--when, to enter or effectuate judgment, it needs to:

(A) conduct an accounting;

(B) determine the amount of damages;

(c) establish the truth of any allegation by evidence; or

(D) investigate any other matter.

1  "The general rule of law is that upon default the factual allegations of the complaint, except those
2  relating to the amount of damages, will be taken as true." (citations omitted).  *Geddes v. United*
3  *Financial Group*, 559 F.2d 557, 560 (9th Cir.1977).  Factors which may be considered by courts in
4  exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to
5  the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4)
6  the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6)
7  whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal
8  Rules of Civil Procedure favoring decisions on the merits.  *Eitel v. McCool*, 782 F.2d 1470,
9  1471-1472 (9th Cir.1986).

## DISCUSSION

Service of summons and complaint in this action was made on December 14, 2010.  True and correct copies of the proofs of service were filed with the Court on January 10, 2011.  (Docket Nos. 5, 6, 7, 8.)  All Defendants failed to respond to the complaint or otherwise appear in this action.  On January 20, 2011, the Clerk entered default against Defendants Alvin Custodio Verzosa and Triple V, Inc. (Docket No. 10.)  On January 25, 2011, the Clerk entered default against Defendants Victorino Ramos Alejandro and Emilio Jularbal.  (Docket No. 13).  Defendants are not infants or incompetent persons, and are not in military service or otherwise exempted under the Soldiers' and Sailors' Civil Relief Act of 1940.  Declaration of Thomas P. Riley In Support of Plaintiff's Application for Default Judgment by the Court Against Defendants.  (Docket No. 19-2.)

Plaintiff now seeks default judgment pursuant to 47 U.S.C. § 605 against Defendants for "unlawfully intercepting, receiving, publishing, divulging, displaying, and/or exhibiting" the Manny Pacquiano v. Miquel Cotto Championship Fight Program ("the Program") on November 14, 2009, at Defendants' commercial establishment in San Mateo, California.  Plaintiff  requests that the Court enter judgment against Defendants in the amount of $114,200.

The relevant sections of 47 U.S.C. § 605, which address unauthorized publication or use of wire or radio communications, state (emphasis added):

> (e) Penalties; civil actions; remedies; attorney's fees and costs; computation of
>     damages; regulation by State and local authorities

2

> (3)(A) Any person aggrieved by any violation of subsection (a) of this section or paragraph (4) of this subsection may bring a civil action in a United States district court or in any other court of competent jurisdiction.
>
> (B) The court--
>
> (I) may grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain violations of subsection (a) of this section;
>
> (ii) may award damages as described in subparagraph (c); and
>
> (iii) <u>shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails.</u>
>
> (C)(i) Damages awarded by any court under this section shall be computed, at the election of the aggrieved party, in accordance with either of the following subclauses;
>
> (I) the party aggrieved may recover the actual damages suffered by him as a result of the violation and any profits of the violator that are attributable to the violation which are not taken into account in computing the actual damages; in determining the violator's profits, the party aggrieved shall be required to prove only the violator's gross revenue, and the violator shall be required to prove his deductible expenses and the elements of profit attributable to factors other than the violation; or
>
> (II) <u>the party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just,</u> and for each violation of paragraph (4) of this subsection involved in the action an aggrieved party may recover statutory damages in a sum not less than $10,000, or more than $100,000, as the court considers just.
>
> (ii) <u>In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section.</u>

In support of Plaintiff's motion for default judgment, Joseph Gagliardi, President of Plaintiff Corporation, has filed an affidavit attesting that Plaintiff is a closed-circuit distributor of sports and entertainment programming. (Docket No. 19-4.) Plaintiff purchased and retained the commercial exhibition licensing rights to the Program, which was broadcast on Saturday, November 14, 2009. Plaintiff then marketed the sub-licensing (commercial exhibition) rights in the Program to its commercial customers. Affidavit in Support of Plaintiff's Application for Default Judgment by the Court, ¶ 3. Gagliardi submits that unchecked signal piracy has not only cost the company millions of dollars in lost revenue, but also has a detrimental effect on lawful residential and commercial customers of cable and satellite broadcasting. *Id.* at ¶11. He believes that the persistent signal

piracy of Plaintiff's programming costs it, its customers and their communities millions of dollars annually, resulting in part from the perceived lack of consequences (including nominal or minimal damages awarded by the courts which hear its cases). *Id*. at ¶ 12. Accordingly, Plaintiff requests the maximum sum an aggrieved party may recover in damages for a single violation under 47 U.S.C. § 605(e)(3)(C)(i)(II), which is $10,000. In addition, Plaintiff seeks the maximum an aggrieved party may recover under 47 U.S.C. § 605 (e)(3)(C)(ii) for a willful violation, which is $100,000. Finally, Plaintiff also seeks an award of $4,200 for the tort of conversion. *See* Cal. Civ. Code § 3336.

The Court finds that in this case, the summons and complaint were properly served on Defendants, their default was properly entered, and the complaint is sufficiently well-pleaded. By their default, Defendants have admitted to willfully violating the referenced statutes for purposes of commercial gain. Plaintiff has submitted the sworn affidavit of investigator Jeff Kaplan, who observed the unlawful exhibition of the Program at Defendants' commercial establishment. (Docket No. 19-3.) Kaplan states in his affidavit that the capacity of the establishment was approximately 149 people. Kaplan counted the people present three times in a 45 minute time period, and recorded head counts of 30 plus, 30 plus, and 40 plus. Declaration of Affiant, p. 2. The establishment had three projection screens, one of which was used to broadcast the Program.[1] *Id*.

In seeking an award of enhanced statutory damages, Plaintiff argues that Level 236 a/k/a Casbah Restaurant is a commercial establishment and could have lawfully obtained the Program only if Defendants had contracted with Plaintiff for the right to show it. It reasons that Defendants must thus have undertaken specific wrongful actions to intercept and/or receive and broadcast the encrypted telecast. As set forth above, Plaintiff's president, Joseph Gagliardi, argues that a large damage award is necessary to act as a deterrent to such piracy.

Plaintiff relies on *Joe Hand Promotions, Inc. v. Haddock*, No.1:09cv0290, 2009 WL 2136117 (E.D.Cal. 2009) to argue that the maximum statutory damages for willful conduct are appropriate here. In *Haddock*, the district court awarded a total of $50,000 in damages to the plaintiff, $15,000 of which Plaintiff reasons was for enhanced damages. *Id*. at *2. The court found

---

[1] Although Plaintiffs assert that the Program was shown on three screens, Mr. Kaplan states in his declaration that there were three screens, two showing videos and one showing the Program. Declaration of Affiant, p. 2.

4

that because the program was broadcast on five televisions and because the establishment was located in a "relatively urban city" with a population in excess of 100,000, the impact was more than minimal. *Id.*

Plaintiff argues that the population of San Mateo is in excess of 91,601 people. *See* http://quickfacts.census.gov/. Thus, the Program was broadcast in a city of comparable size to that in *Haddock*. However, while Plaintiff argues that the Program was being displayed on three televisions when Jeff Kaplan was present, as set forth above, this is not what Mr. Kaplan states in his declaration. Thus, the Court finds that the Program was shown on one screen, rather than the five screens used in *Haddock*.

Plaintiff's investigator observed 30 to 40 people in Defendants' establishment at the time the Program was shown. While he paid a $20 cover charge to enter the establishment, there is no evidence that this cover charge was connected with the showing of the Program. Similarly, there is no evidence that the cost of food or beverages was heightened due to the showing. Other factors weighing in favor of a modest damage award in this case are that there is no evidence that all of the patrons in Defendants' establishment were there to view the program, *see J & J Sports v. Medinarios*, C08-0998, 2008 WL 4412240 (N.D.Cal Sept. 25, 2008), at *3, and that there is no evidence that Defendants are repeat offenders, *see Lan Thu Tran*, C05-5017, 2006 WL 2691431 (N.D.Cal Sept. 20, 2006), at *2.

Accordingly, the Court finds that Plaintiff is entitled to $1000 in statutory damages plus $5000 in enhanced statutory damages. *See Medinarios*, 2008 WL 441220, at *3 (awarding $5000 in enhanced statutory damages under similar facts).

Plaintiff also seeks $4,200 in conversion damages, asserting that this is the amount Defendants would have been required to pay had they ordered the Program from Plaintiff. Plaintiff relies on California Civil Code Section 3336, which provides as follows:

> The detriment caused by the wrongful conversion of personal property is presumed to be:
>
> 1. First--The value of the property at the time of the conversion, with the interest from that time, or, an amount sufficient to indemnify the party injured for the loss which is the natural, reasonable and proximate result of the wrongful act complained of and which a proper degree of prudence on his part would not have averted; and

5

Second--A fair compensation for the time and money properly expended in pursuit of the property.

Joseph Gagliardi states in his affidavit that the commercial sublicense fee for this event would have been $4,200. The Court therefore finds that Plaintiff is entitled conversion damages in that amount pursuant to California Civil Code § 3336.

## RECOMMENDATION

In light of the foregoing, IT IS HEREBY RECOMMENDED as follows:

1. that Plaintiff be awarded statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) in the amount of $1000;

2. that Plaintiff be awarded enhanced statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii) in the amount of $5000; and

3. that Plaintiff be awarded conversion damages pursuant to California Civil Code § 3336 in the amount of $4,200.[2]

Any party may file objections to this report and recommendation with the district judge within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. Proc. 72(b); Civil L.R. 72-3. Failure to file objections within the specified time may waive the right to appeal the District Court's order.

Dated: March 15, 2011

_____
NANDOR J. VADAS
United States Magistrate Judge

---

[2] The Court notes that Plaintiff does not seek attorneys' fees or costs.